EILEEN P. ROE, Adm'rx of the Estate of Margaret V. Farrell, Deceased, Petitioner-Appellee, *v.* ESTATE OF IRENE A. FARRELL, Incompetent, *et al.*, Respondents-Appellants.

Third District No. 75-444

Opinion filed October 14, 1976.—Rehearing denied November 17, 1976.

ALLOY, P. J., dissenting.

John J. Black and James L. Peacock, both of Morris, for appellants.

Hynds and Hynds, of Morris, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Margaret Farrell died intestate on April 30, 1973. She was survived by two sisters, Irene and Marian Farrell, and by several children of predeceased brothers and sisters, all of whom comprise decedent's only heirs at law. The bulk of the property owned by decedent during her

lifetime passed, upon her death, to her two sisters as surviving joint tenants. Accordingly, assets valued only at $13,848 were subject to probate. Grundy County National Bank is conservator of the separate estates of Irene and Marian Farrell; petitioner, Eileen Roe, is the administratrix of decedent's estate. The question presented is whether the circuit court erred in ordering the conservator to contribute from the separate estates of Irene and Marian Farrell proratably with the probate assets of decedent's estate toward certain debts, costs of administration and Federal estate taxes, which are liabilities of decedent's estate, on the grounds that such liabilities were generated in those proportions by these probate and nonprobate assets. Liabilities totaling $3,067.34 for medical and burial costs were not included in the proration order, but were charged wholly against the probate assets. Expenses of harvesting a growing crop from the joint tenancy farmlands, and for 1973 real estate taxes on this land, were paid by the surviving joint tenants who received the crop. The balance of liabilities totaling $13,235.34, and including an appraisal fee and title costs of $282.50, attorney fees of $4,600, the fee for the administratrix of $1,500, and a Federal estate tax liability of $5,340.95 were included in the proration order which is involved in this appeal.

■■ In *In re Estate of Phillips*, 1 Ill. App. 3d 813, 275 N.E.2d 685 (3d Dist. 1971), this court had occasion to decide the question of whether Federal estate taxes and costs of administration were payable from decedent's residuary estate or were to be apportioned among the various beneficiaries under decedent's will. The circuit court had held these liabilities of the estate payable entirely from the residuary legacy to decedent's sister so that a specific devise to a stepson, absent any contrary direction in the will, was free of incumbrance by these expenses. This court affirmed that decision upon the grounds that the liability of the residuary estate for such expenses was so long established in Illinois law, that notwithstanding the possible merits of any rule of apportionment, a departure from established law would have such widespread effects on wills drafted in reliance thereon, that such change, if desirable, should be made by the legislature and not by the courts. It was also stated in that case that the argument for equitable apportionment seemed, under the facts presented there, to have little weight since there were no trust assets or jointly owned assets which increased the Federal estate tax liabilities but formed no part of the probate estate subject to such claims. Petitioner argues here that that statement in *Phillips* supports the conclusion that where such nonprobate assets do exist, as here, the merits of equitable apportionment should be accepted as manifest. We are persuaded to the contrary.

When a decedent has died intestate leaving assets subject to probate with no indication of an intention to make any gift of it, the argument for

an equitable apportionment seems to us to have even less merit. The interests of surviving joint tenants, who were clearly intended to be benefitted by decedent, would be diminished for purposes of satisfying liabilities of the estate to the extent of such contribution from surviving joint tenants, and the estate would be thereby increased for the benefit of heirs at law for whom decedent exhibited no donative intent whatever. The Probate Act of 1975, at section 18—14 (Ill. Rev. Stat. 1975, ch. 3, par. 18—14), and its counterpart at section 207 of the prior Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 207) charge decedent's probate assets with both the costs of administration and Federal estate tax liabilities, and not merely for the proportions generated by the probate assets. These claims against probate assets are further classified as to priorities at section 18—10 in the Probate Act of 1975 and at section 202 in the prior Probate Act. In respect to joint tenancy property, however, the interests of the deceased tenant do not descend to his heirs or pass to his representative. (*Klajbor v. Klajbor*, 406 Ill. 513, 94 N.E.2d 502, 504 (1950); 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §3, at 95 (1965).) Joint tenants hold "by the moiety * * * and by the whole," which means, by the ancient common law, that each of the tenants is seized of the entire estate for the purposes of tenure and survivorship, but only of an undivided part for the purpose of immediate alienation. 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §7, at 98 (1965); see *In re Estate of Taggert*, 15 Ill. App. 3d 1079, 305 N.E.2d 301 (5th Dist. 1973).

■■ It has been so long accepted as the law of this State that property passing by joint tenancy is insulated from claims against decedent's probate assets that it is reasonable to suppose that most if not all of them are created with the intention in mind that the survivor shall take free of debts which the Probate Acts have acknowledged to be claims against a decedent's estate. Indeed, the administratrix concedes that avoidance of probate, and its costs, is usually the dominant motive for creation of joint tenancies.

In *In re Estate of Fairchild*, 21 Ill. App. 3d 459, 315 N.E.2d 658 (4th Dist. 1974), decedent left a will making a specific devise to her granddaughter and then designated others as residuary legatees. The latter brought an action seeking equitable apportionment whereby the specific devisee would be charged with that proportion of the Federal estate tax as was generated by the value of property she received in consequence of the death. The appellate court in that case defined the essential differences between the State inheritance tax on the gift to a donee and the Federal succession tax, which is upon the gross estate as described by Federal law. Following the *Phillips* decision, the court in *Fairchild* concluded that Illinois law, neither legislatively nor judicially, has recognized the doctrine of total apportionment, partial

apportionment or any apportionment within the factual structure of that case. It determined that the decision in *In re Estate of Van Duser*, 19 Ill. App. 3d 1022, 313 N.E.2d 228 (1st Dist. 1974) was distinguishable both fact-wise and issue-wise.

The *Van Duser* case, on its facts, is the most comparable of all to the case at bar. In that case decedent held assets totaling $169,540.60 in joint tenancy with her surviving sister, Katherine, and with various of Katherine's descendants. On her death, decedent was survived not only by all these joint tenants, but also by one other sister, Ethel Van Duser, with whom she held no property whatever in joint tenancy. Having died intestate, it was also apparent that decedent intended no testamentary gift to Ethel Van Duser, although she left a probate estate of $65,000 with only Ethel and Katherine, her two sisters, as heirs at law. The court there determined at 19 Ill. App. 3d 1022, 1024, 313 N.E.2d 228, 229, that:

> "[L]ogic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to nonprobate assets to fairly distribute the Federal estate tax burden. There is no claim here of any tangible manifestation of intent to the contrary by the decedent, and to refuse to apportion the tax burden would result in unjust enrichment to the recipients of the nonprobate estate at the expense of the surviving heirs. We would be hard put to say that such was the intention of the decedent."

The circuit court in the case at bar, correctly finding the facts in *Van Duser* more parallel to those presented here, accepted that case as the controlling precedent. On consideration of principles of law and equity, however, we find ourselves unpersuaded by the conclusions in *Van Duser* that any *unjust* enrichment inures to surviving joint tenants by charging the probate assets with all the liabilities of the decedent's estate. We do not concur that the Federal estate tax law, through equity powers of State courts, either requires or permits judicial amendment to the statutory provisions of the Probate Acts of Illinois. As noted earlier, these enactments charge the probate assets with decedent's Federal estate tax liability and costs of administration and not merely with such proportions thereof as are generated by the value of probate assets. To the extent that probate assets may be insufficient to pay the Federal tax, which might, to the extent of the insufficiency, thereby become a lien upon property passing by joint tenancy, then any attorney fees involved in effecting the discharge of such lien and the payment of the tax might justly be charged against that asset. But that result will follow in consequence of the Federal law and not be a judicial amendment of a State statute through

application of any equitable principle. There is no rule better established in equity than that expressed by the fundamental maxim that "equity follows the law." The main purpose of the maxim is to define that judicial action will keep within the boundaries of established rules and precedents and will not change or unsettle rights which are defined and fixed by existing legal principles. (27 Am. Jur. 2d *Equity* §123, at 649 (1966).) Equity will not modify the legal character of a joint tenancy estate. And giving effect to the legal characteristics of such estates, we believe the creation of joint tenancy estates is itself an unqualified manifestation here of decedent's intent that her interests therein should transfer to the survivors under rules of law long recognized by the bench and bar as applicable to the transmission of property by joint tenancy. We fail to appreciate that giving stability to these rules can be construed as an *unjust* enrichment of those intended to be benefitted thereby at the expense of surviving heirs at law for whom the intestate exhibited no donative intent at all—except perhaps to the limited extent that something might be left for their enjoyment after all debts are paid from assets subject to probate, as the Probate Acts require.

We take an opposite view from that accepted in the First appellate District in *Van Duser*, upon the grounds that any change of law which will substantially alter the legal characteristics of joint tenancy estates, to make them liable for probate costs, and which will modify the law of distribution of decedent's estates, and will effect an amendment to the language of the Probate Act of 1975, should be legislatively mandated if deemed desirable, and should not be borne of judicial improvisation. Accordingly, the judgment of the circuit court is reversed.

Reversed.

STOUDER, J., concurs.

Mr. PRESIDING JUSTICE ALLOY, dissenting:
I believe that the issue framed in the instant case is of sufficient significance that the supreme court of this State should resolve this problem at the earliest convenient opportunity. Accordingly, I am outlining the basic issue in this case and briefly stating the reasons this case is distinguishable from *In re Estate of Phillips* (3d Dist. 1971), 1 Ill. App. 3d 813, 275 N.E.2d 685, in which we determined against equitable apportionment of testate property. In the cause before us, however, we have a case which very closely resembles the case of *In re Estate of Van Duser* (1st Dist. 1974), 19 Ill. App. 3d 1022, 313 N.E.2d 228. In the *Van Duser* case, the decedent died intestate leaving her two sisters, a gross probate estate of $25,000 in personal and $40,000 in real estate. In addition to these probate assets, there were other assets held in joint tenancy

amounting to $169,540 which were not included in the probate estate. This joint tenancy property was held in the name of the decedent and one of her sisters, and her sister's children, and her sister's grandchildren. The total Federal estate tax amounted to $39,667 since joint tenancy property is considered part of decedent's taxable estate for Federal estate tax liability. Of the tax of $39,667, $30,623 was generated by the value of the assets held in joint tenancy. The court in that case stated the following:

> "We therefore agree with appellee that logic, reason, and simple justice dictate that, unless there is a contrary intention expressed by the decedent, as in a will in testate estates, the doctrine of equitable contribution should be invoked as to non-probate assets to fairly distribute the Federal estate tax burden." (19 Ill. App. 3d 1022, 1024, 313 N.E.2d 228, 229.)

The circuit court in the case before us correctly found that the facts in *Van Duser* were parallel to those presented in our case and followed the *Van Duser* case. The majority opinion, however, takes a contrary position.

I feel that the application of equitable principles requires that the holder of nonprobate assets, such as joint tenancy property, should be required to proportionately pay Federal estate tax, in testate as well as intestate estates. If a testator desires a contrary result he may direct in his will that Federal estate tax, as well as other taxes and costs of administration, be paid exclusively out of probate assets. The *Van Duser* case simply concluded that Federal estate taxes should be paid proportionately by the beneficiaries whose benefits resulted from transfers from the same decedent and that it would be inequitable to place the total tax burden on the estate, unless the testator desired that such burden be so imposed. It is apparent that if the assets in the probate estate would be insufficient to pay the Federal estate tax, that tax could be collected from the joint tenants. To conclude, therefore, that this joint tenancy property should escape the tax burden imposed by Federal estate taxes by reason of the value of such property is not consistent with equity and seems inconsistent with the intention of potential testators, who provide by will for certain benefits to beneficiaries which may be wholly wiped out by reason of the Federal estate tax burden existing principally by reason of the prior conveyances in joint tenancy.

I do not assign to the *Van Duser* case anything more than a precedent that the proportionate amount of Federal estate tax, unless otherwise designated in the will, should be borne by the joint tenancy beneficiaries. To come to such conclusion does not mean that there should be an apportionment of other expenses of administration, since probate itself is required as to the assets not passing in joint tenancy. Only the expenses

incident to payment of Federal estate taxes specifically should be apportioned under such conditions.

I recognize that this issue has been discussed in many cases in this State and no practical or final determination has been made by the supreme court on this issue. I believe that such determination should be made and that the burden of Federal estate taxes should be equitably apportioned so as to charge the joint tenancy property with the proportionate tax arising by reason of the inclusion of such property in the Federal estate tax return. I believe that, under the facts in this particular case, which are distinguishable from the case of *In re Estate of Phillips*, 1 Ill. App. 3d 813, 275 N.E.2d 685 (3d Dist. 1971), and *In re Estate of Fairchild*, 21 Ill. App. 3d 459, 315 N.E.2d 658 (4th Dist. 1974), since those cases were dealing with nonprobate assets, the trial court should be affirmed.

I believe that the courts should handle the question of equitable apportionment of Federal estate taxes in Illinois as is done in many other States. I do not believe it is wise to impose on the legislature to enact legislation in this area unless such legislation is precise and clearly establishes the equitable apportionment relationship so that all types of property are treated equitably. Action on this particular issue is most significant today, with the tremendous number of living trusts being created and with the existence of some confusion in the State, with inconsistent decisions on the very issue involved in this case.

For the reasons stated, I believe that the judgment of the Circuit Court of Grundy County, to the extent of the obligation arising from Federal estate taxes, should be upheld.