473 So.2d 1358 (1985)
BANK OF SOUTH PALM BEACHES, Appellant,
v.
STOCKTON, Whatley, Davin & Company, Etc., Castle Builders, Inc., Etc., et al., Appellees.
No. 84-1031.
District Court of Appeal of Florida, Fourth District.
July 31, 1985.
Rehearing Denied September 3, 1985.
*1359 Allen R. Tomlinson of Jones & Foster, P.A., West Palm Beach, for appellant.
Thomas J. Yeager of Nason, Gildan, Yeager & Gerson, P.A., West Palm Beach, for appellees.
HURLEY, Judge.
This is an appeal from a final judgment determining the lien priority of competing mortgages and claims in a foreclosure action. In an apparent attempt to reach the fairest result, the trial court disregarded the "first in time" maxim and ruled that appellee's interest was superior to that of appellant bank, notwithstanding the fact that the bank's interest was recorded first. We reverse. The principal question before us is whether a court sitting in equity may circumvent established rules of law in order to effect an equitable disposition.

I
In 1980, Stockton, Whatley, Davin & Company ("SWD") loaned $448,200 to Castle Builders construction company. This loan was secured by a promptly recorded mortgage on two parcels of land. Eventually, Castle Builders fell behind in its payments on the loan and asked SWD for a second loan in the amount of $150,000, promising to apply the proceeds of the second loan to pay off the arrearage which had accumulated on the first. Under the terms proposed by Castle Builders, the two loans would together be secured by the two parcels mentioned above.
Although SWD was willing to advance the additional $150,000, an obstacle prevented the company from doing so. After SWD had recorded the mortgage which secured the initial loan, several additional creditors had lent Castle Builders various sums. All of these intervening loans were secured by duly-recorded mortgages on the same two parcels of land offered as security for the proposed second loan to Castle Builders. SWD realized that these mortgages would have lien priority in the encumbered parcels over any mortgage securing funds subsequently advanced by the company. The problem was seemingly resolved when these intervening creditors agreed to subordinate their security interests in the two designated parcels to the interest which would be created therein when SWD lent Castle Builders the additional $150,000.
Apparently through an oversight on the part of SWD, however, the company never procured a subordination agreement from appellant bank regarding a mortgage the bank held on one of the parcels. That mortgage secured a note from Castle Builders in the amount of $77,500 and had been recorded after SWD recorded its original mortgage securing the $448,200 loan, but before SWD and Castle Builders began discussing the second loan.
Despite the existence of this non-subordinated intervening mortgage, SWD lent Castle Builders the additional $150,000. The sum was advanced pursuant to a "mortgage modification agreement" under which the above-mentioned parcels of land secured both the initial $448,200 loan and the subsequent $150,000 loan. Of the $150,000 advanced, $20,822.80 was used to pay off a portion of the accrued overdue interest and principal on the $448,200 loan. Fifty thousand dollars was placed in an interest reserve account to be used to pay for future interest payments as they become due. Thus, a total of $72,822.80 of the $150,000 was either used or designated for payments on the $448,200 note.
Notwithstanding these measures, Castle Builders defaulted on both of the SWD loans, and the company initiated foreclosure proceedings. Appellant bank was brought into the action as a codefendant and filed a cross-complaint. In its final *1360 judgment of foreclosure, the trial court found that SWD had first lien priority on the two parcels in the following amounts: (A) $405,575 for the remaining unpaid principal on the $448,200 note, (B) $105,381.21 in accrued overdue interest on the $448,200 note, (C) $72,822.80, which represented that portion of the $150,000 advanced under the modification agreement which was used or designed to pay off interest on the $448,200 note, and (D) $20,000 in attorney's fees.
The bank contests the finding of lien priority for only two of the above amounts  the $72,822.80 advanced under the modification agreement and the $20,000 attorney's fees figure.

II
The bank contends that its lien priority is superior to that of the $72,822.80 advanced pursuant to the modification agreement because its $77,500 mortgage encumbering one of the parcels was recorded before SWD entered into the agreement. The parties agree, and the lower court recognized, that the bank's mortgage was indeed recorded prior to the mortgage modification agreement.
We find this fact to be determinative of the priority issue, for "[t]he well-established rule governing priority of lien interests is `the first in time is the first in right.'" Walter E. Heller & Co. Southeast, Inc. v. Williams, 450 So.2d 521, 532 (Fla. 3d DCA 1984), review denied, 462 So.2d 1108 (Fla. 1985); see also United States v. Atlantic Municipal Corp., 212 F.2d 709 (5th Cir.1954); United States v. First Federal Savings & Loan Association of St. Petersburg, 155 So.2d 192 (Fla. 2d DCA 1963). The Supreme Court stated the rule in less-abbreviated form in United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954):
"The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant."
(quoting Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592 (1827)). (There has been no allegation in the case sub judice that the bank's lien was "intrinsically defective" or that the bank took any action which might arguably displace its lien priority.)
If notice  actual or constructive  has been given, the priority of a mortgage will be determined by priority in time. Guaranty Title & Trust Co. v. Thompson, 93 Fla. 983, 113 So. 117 (1927); Cain & Bultman, Inc. v. Miss Sam, Inc., 409 So.2d 114 (Fla. 5th DCA 1982). The very act of recording a mortgage in compliance with the Florida recording statute[1] constitutes constructive notice to all subsequent mortgagees. Feemster v. Schurkman, 291 So.2d 622 (Fla. 3d DCA 1974).
It is not disputed that the bank's mortgage securing the $77,500 note from Castle Builders was recorded in compliance with the Florida recording statute and before SWD either recorded or entered into the modification agreement with Castle Builders. SWD therefore had constructive knowledge of the bank's prior interest, and the priority in time rule governs. Consequently, the bank's mortgage securing the $77,500 note has lien priority over all funds advanced to Castle Builders pursuant to the mortgage modification agreement.
Notwithstanding the obvious conflict between established precedent and the lower court's ruling, SWD nevertheless advances a two-pronged argument for upholding the trial court. First, the company contends that the trial court effected an equitable disposition of the case. Since the bank does not dispute that SWD has first lien priority as to all accumulated overdue principal and interest on the original $448,200 note, SWD argues that it should have first lien priority as to the $72,822.80 which was either used or set aside to pay off the accumulation on that note. Second, SWD advances the novel theory that a court sitting *1361 in equity may circumvent established rules of law in order to reach a fair result.
We concede that a mortgage foreclosure is an equitable action. See, e.g., Cross v. Federal National Mortgage Association, 359 So.2d 464 (Fla. 4th DCA 1978). We refrain from deciding whether the lower court reached the fairest possible result. Such a determination is unnecessary since we categorically reject appellee's theory that a court sitting in equity has the power to disregard established law in order to reach a fair result.
Attractive as this theory may be to SWD under the circumstances, the simple fact is that it has no basis in law. Indeed, the theory is in direct conflict with a cardinal tenet of the law of equity. In Roe v. Estate of Farrell, 42 Ill. App.3d 705, 1 Ill. Dec. 218, 222, 356 N.E.2d 344, 348 (1976), the court noted that:
[T]here is no rule better established in equity than that expressed in the maxim that "equity follows the law."
Put in other words, "[c]ourts of equity have no power to overrule established law." Orr v. Trask, 464 So.2d 131, 135 (Fla. 1985). This equitable principle delineates the jurisprudential borders beyond which courts of equity may not venture.
The main purpose of the maxim is to define that judicial action will keep within the boundaries of established rules and precedents and will not change or unsettle rights which are defined and fixed by existing legal principles.
Farrell, 1 Ill.Dec. at 222, 356 N.E.2d at 348.
Whenever a given point of law is clearly covered by established legal principles, equity cannot interfere and disregard these principles. In the Matter of Ruby's Florida, Inc., 11 B.R. 171 (Bktcy.M.D.Fla. 1981); see also Civil Service Personnel Association v. City of Akron, 48 Ohio St.2d 25, 356 N.E.2d 300 (1976); Independent School District No. 89 of Oklahoma County v. Oklahoma City Federation of Teachers, Local 2309, 612 P.2d 719 (Okla. 1980).
We have already noted that under clearly-established principles of law, appellant bank's duly-recorded mortgage securing the $77,500 note has lien priority over the $72,822.80 which SWD subsequently advanced under the mortgage modification agreement. The trial court exceeded its authority when it disregarded these established principles and found in favor of SWD on the lien priority issue. Courts of equity simply have no power to issue rulings which they consider to be in the best interests of justice without regard to established law. Flagler v. Flagler, 94 So.2d 592, 594 (Fla. 1957) (en banc); see also Schwartz v. Zaconick, 68 So.2d 173 (Fla. 1953).

III
The lower court found that the bank's $77,500 loan was subservient in lien priority not only to the $72,822.80 advanced by SWD under the modification agreement, but also to SWD's lien on the encumbered property which secured $20,000 in attorney's fees. We agree with appellant bank's contention that this finding is not supported by competent, substantial evidence.
SWD and the bank entered into a stipulation agreement regarding their respective claims for attorney's fees. Although the agreement was never reduced to writing, it is nonetheless susceptible to reconstruction from the several discussions thereof contained in the record on appeal. The bank conceded that SWD's attorney fees would be $20,000, and the court treated these fees as liens on the secured property. Under the agreement, SWD would have first lien priority vis-a-vis the bank's $77,500 mortgage for only $15,000 of the $20,000 amount. The remaining $5,000 would be subservient in lien priority to the bank's mortgage.
The lower court misapplied the stipulation agreement and reached a result contemplated by neither party. With respect to the attorney's fees, we hold that SWD's first lien priority extends only to the first $15,000; the remaining $5,000 is subservient to the bank's $77,500 mortgage.
*1362 Accordingly, we hold that the lower court erred when it (A) failed to grant appellant bank first lien priority on its $77,500 mortgage vis-a-vis the $72,822.80 advanced by SWD pursuant to the modification agreement, and (B) awarded SWD first lien priority for the entire $20,000 attorney's fees amount. Consequently, with respect to this defendant, we reverse and remand with instructions that the trial court correct its ruling to conform to this decision.
DOWNEY and BARKETT, JJ., concur.
NOTES
[1] § 695.01, Fla. Stat. (1983).