792 So.2d 1222 (2001)
SUNTRUST BANK, Appellant,
v.
RIVERSIDE NATIONAL BANK OF FLORIDA, et al., Appellee.
No. 4D00-2341.
District Court of Appeal of Florida, Fourth District.
August 29, 2001.
*1223 David S. O'Quinn of Dean, Mead, Minton & Klein, Fort Pierce, for appellant.
Alan S. Polackwich, Sr. of Clem, Polackwich, Vocelle & Berg, Vero Beach, for appellee.

EN BANC
KLEIN, J.
Pursuant to appellee's motion for en banc rehearing, the court agreed to consider this case en banc because the panel opinion receded from two prior decisions of the court. The majority of the court having agreed with the majority opinion of the panel, the panel opinion, filed February 14, 2001, is withdrawn and the following opinion, which is identical, is substituted in its place. The motions for rehearing are denied.
The issue presented in this foreclosure action is whether Suntrust Bank, which lost the priority of its original first mortgage when it refinanced and satisfied that mortgage, is entitled to relief under the doctrine of equitable subrogation. The trial court denied relief, holding that the mortgage of Riverside Bank, which was recorded between the original first mortgage and the refinancing mortgage, had first priority. We reverse.
In 1993 Suntrust recorded a balloon first mortgage in the amount of $148,500. Two years later Riverside recorded a $100,000 second mortgage, notifying Suntrust of the second mortgage and asking for a limitation of future advances. Three years after that, in 1998, Suntrust refinanced the first mortgage, lending $136,800. Suntrust's original first mortgage was paid from the proceeds and satisfied of record. Suntrust assumed that the new mortgage was a first mortgage because its title search failed to disclose the Riverside mortgage.
When the property went into foreclosure and Suntrust discovered it had lost its priority, it sought relief under the doctrine of equitable subrogation, which provides that when loan proceeds are used to satisfy a prior lien, the lender stands in the shoes of the prior lienor, if there is no prejudice to other lienors. The trial court determined that it was precluded from applying that doctrine because of two decisions of this court and granted Riverside's motion for summary judgment. Although the trial court was correct in its interpretation of our decisions, those decisions did *1224 not recognize an earlier Florida Supreme Court case which applied equitable subrogation under similar facts.
In Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933) the borrower had given a bank a first mortgage and Alderman a second mortgage. When the borrower refinanced the original mortgage with the bank, he told the bank there were no other mortgages of record, and the bank's title search failed to show the Alderman second mortgage. In the refinancing transaction, as in the present case, the original first mortgage was satisfied and a new mortgage was recorded.
Subsequently, in foreclosure proceedings, the bank discovered it had lost its priority. Under the doctrine of equitable subrogation, the bank sought to be subrogated to the priority of its original first mortgage, because the funds derived from the refinancing mortgage were used to satisfy the original first mortgage. The Florida Supreme Court granted the relief, explaining:
The doctrine of subrogation does not arise from statute or custom, but is peculiarly a creation of equity, grounded on the proposition of doing justice to the parties without regard to form. It rests on the maxim that no one shall be enriched by another's loss, and may be invoked when and. where justice demands its application. It has been greatly expanded in this country, may be employed to relieve from fraud or mistake, but is not allowed if it works any injustice to the rights of others. 25 R.C.L. § 2.
* * *
The rule is academic that one who makes a loan to discharge a first mortgage, pursuant to an agreement with the mortgagor that he shall have a first mortgage on the same lands to secure it, the lender will be subrogated to the rights of the first mortgagee, notwithstanding there is at the same time a second outstanding mortgage of which he (the lender) is ignorant.
In representing that there were no other incumbrances on the lands mortgaged, Godwin perpetrated a fraud on appellant. As a result of this fraud and failure to locate any adverse claimant to said lands, appellant advanced money to retire Godwin's first mortgage on the express agreement that it (appellant) was to have a first lien on said lands to secure repayment of the sum loaned. It would be grossly inequitable under such circumstances to hold that the appellant was not entitled, as against the holder of the second mortgage, to be treated as the assignee of the first mortgage, and thus by chance or fortune raise the second mortgage to the dignity of the first, contrary to the intention of the parties.
The application of this rule works common justice to all; it prevents injury to appellant, who furnished the money to pay off the first mortgage in ignorance of the second; it gives appellant the benefit of its payment, carries out the intention of the parties; and leaves Alderman, the holder of the junior mortgage, in his original position.
Godwin, 145 So. at 885-86.
The only distinction between Godwin and the present case is that in Godwin, in addition to the bank negligently failing to find the second mortgage when it searched the title, the owner fraudulently misrepresented that there were no other liens. Although there was no fraud in the present case, it is clear from the opinion in Godwin that equitable subrogation will be applied to relieve negligence, where the position of the original junior lienors will be no worse *1225 than before the first mortgage was satisfied.
The doctrine of equitable subrogation was more recently applied by our supreme court in Palm Beach Savings & Loan Ass'n, F.S.A. v. Fishbein, 619 So.2d 267 (Fla.1993). In Fishbein there had been first, second and third mortgages on a residence owned by a husband and wife who were in dissolution proceedings. In order to consolidate the debt, the husband borrowed $1.2 from a bank and forged his wife's signature to the mortgage. He used $930,000 of the loan proceeds to pay off the three existing mortgages.
When the bank's mortgage went into foreclosure it was uncontested that the wife had not consented to the mortgage and that the residence was a homestead. The trial court thus ruled that the mortgage could not be foreclosed, but did grant the bank an equitable lien to the extent that $930,000 of its loan was used to satisfy preexisting mortgages. This court reversed, concluding that the bank's negligence in not requiring the wife to sign the mortgage in person was not a basis on which to impose an equitable lien against a homestead.[1] The bank sought review in the Florida Supreme Court, which characterized the bank's argument as follows:
The bank argues, however, that because its loan proceeds were used to satisfy the prior liens, it stands in the shoes of the prior lienors under the doctrine of equitable subrogation. Thus, the bank argues that it has the same rights to enforce a lien against the homestead property as the prior lienholders.
Fishbein, 619 So.2d at 269.
The Florida Supreme Court held that the bank was entitled to equitable subrogation, emphasizing that if the bank had not lent the money which was used to pay off the three prior mortgages, the wife's interest in the home would have been subject to those mortgages, and she was "not entitled to a $930,000 windfall." Id. at 271.
The Florida Supreme Court has also recognized, without referring specifically to the doctrine of equitable subrogation, that equity will grant relief where a mortgage is satisfied by mistake and no rights of third parties have intervened. United Serv. Corp. v. Vi-An Constr. Corp., 77 So.2d 800 (Fla.1955) and cases cited. So has this court. Sunrise Sav. & Loan Ass'n v. Giannetti, 524 So.2d 697 (Fla. 4th DCA 1988).
Under the Restatement (Third) of Property: Mortgages section 7.6 cmt.e (1996), a refinancing lender is equitably subrogated to the priority of the first mortgage even where it has actual knowledge of the intervening lien:
[u]nder this Restatement, however, subrogation can be granted even if the payor [the refinancing lender] had actual knowledge of the intervening interest; the payor's notice, actual or constructive, is not necessarily relevant. The question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid. Ordinarily lenders who provide refinancing desire and expect precisely that even if they are aware of an intervening lien. A refinancing mortgagee should be found to lack such an expectation only where there is affirmative proof that the mortgagee intended to subordinate its mortgage to the intervening interest.
In rejecting the doctrine of equitable subrogation in the present case, the trial court relied on two decisions of this court which we now address.
*1226 The first of those decisions is Bank of South Palm Beaches v. Stockton, Whatley, Davin & Co., 473 So.2d 1358 (Fla. 4th DCA 1985), in which Stockton had a first mortgage on property owned by a builder, and there were several junior mortgages. When the builder fell behind on the Stockton loan, the builder asked Stockton for an additional loan, and Stockton agreed. Stockton apparently obtained oral agreements from the intervening lenders to subordinate their junior mortgages, but, through oversight, never procured the subordination agreements. When the Stockton second mortgage went into foreclosure, Stockton argued that the portion of its second loan which was used to pay off a portion of the first mortgage should have the same priority as the first mortgage. This court rejected that argument without addressing either the doctrine of equitable subrogation or Godwin.
The other case relied on by the trial court is Independent Life & Accident Insurance Co. v. New Age Development Corp., 625 So.2d 1243, 1244 (Fla. 4th DCA 1993), in which the majority affirmed without opinion, but a special concurring opinion showed that the facts were the same as in Godwin. A bank had refinanced and satisfied a first mortgage, but lost its priority because it failed to detect a second mortgage which had been recorded in the interim. Citing Stockton, the concurring opinion explained that no relief was available for this type of neglect.
Independent Life is indistinguishable from the supreme court's opinion in Godwin. Although Stockton involves slightly different facts, the opinion's inflexible rule that time of recording determines priority is also contrary to Godwin. We therefore conclude that our two decisions, on which the trial court relied, are incorrect in light of Godwin.[2]
After we decided Stockton, but before Independent Life, we did recognize the doctrine of equitable subrogation in a forfeiture case and cited Godwin. In In re Forfeiture of United States Currency in the Amount of Ninety-One Thousand Three Hundred Fifty-Seven and 12/100 Dollars ($91,357.12), 595 So.2d 998, 1000 (Fla. 4th DCA 1992), we reversed a summary judgment denying equitable subrogation, explaining:
[W]e reverse the summary judgment as to appellant's claim for equitable subrogation. The mortgage proceeds were used to pay off two prior recorded mortgages which would have remained liens on the property but for the refinancing. Here, there is also the additional equity that those liens were not satisfied of record at the time of the seizure.
The doctrine of equitable subrogation is designed to apply where the claimant satisfied an obligation of another and then stands in the shoes of the satisfied creditor. The doctrine is founded on established principles of equity to prevent an unjust forfeiture, on the one hand, and a windfall amounting to unjust enrichment, on the other. Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933).
In the present case the trial court granted Riverside's motion for summary judgment holding that, under Stockton and Independent Life, equitable subrogation *1227 was not available as a matter of law. Because those decisions are incorrect, we reverse and remand for further proceedings. We emphasize, however, that equitable subrogation "is not allowed if it works any injustice to the rights of others." Godwin, 145 So. at 885. Accordingly Suntrust will only be entitled to equitable subrogation to the extent that Riverside will be no worse off than it would have been if the original Suntrust mortgage had not been satisfied.[3]
POLEN, C.J., DELL, WARNER, STEVENSON, SHAHOOD, GROSS, TAYLOR and HAZOURI, JJ., concur.
STONE, J., concurs specially with opinion.
FARMER, J., dissents with opinion in which GUNTHER, J., concur.
STONE, J., concurring specially.
I concur in reversal for the reasons stated by the majority, but write separately to emphasize our conclusion that Suntrust is entitled to equitable relief only to the extent that Riverside will be no worse off than before the mortgage satisfaction. Accordingly, it must be recognized that any balance owed on the original debt as of the date of satisfaction cannot be increased or extended to Riverside's detriment. In other words, as between Suntrust and Riverside, Suntrust's priority status is limited to that portion of the mortgage pay-off that satisfied the balance that was owed at the time (presumably with any right that it had under the initial mortgage and note to claim default interest on that balance and any resulting attorney's fees and costs). Riverside retains whatever priority rights and position it had immediately prior to Suntrust's satisfaction of the original mortgage. Riverside, as a junior lienor, should not be "promoted in priority, giving [it] an unwarranted and unjust windfall." Restatement, (Third) of Property: Mortgages sec. 7.6 cmt.a (1997). Furthermore, it seems clear to me that nothing contained in our opinion should be construed as limiting a lender's right to extend the terms of existing notes and mortgages or, to the extent otherwise authorized by law, to provide for, and furnish, future advances under, and modifications of, notes and mortgages.
FARMER, J., dissenting.
Today's decision really has little to do with restoring Sun Trust to a position of priority, for Sun Trust has already achieved all the relief it needs from the title insurance it bought and paid for. Thus the undoubted effect of the majority's decision today is to give a windfall to a *1228 negligent title insurer.[4] Moreover, because it is an insurance company that is the real beneficiary of our largesse, we should not forget that it has already been paidby reason of the premiums it charges for title policiesthe funds necessary to satisfy any Sun Trust claim. In the end we have distorted the recording statutes to give what is designed to be truly rare and tightly circumscribed relief to someone who has really suffered no loss and who has already been paid for this very risk. These considerations alone should give long pause to any thought of granting equitable relief in this case.
As to the rationale of the majority, I have four disagreements which I here sum up: (1) the trial judge was correct because the negligence of Sun Trust and its title insurer and their own inequitable conduct forfeit any claim to equitable subrogation; (2) in fact Riverside would clearly be adversely affected by granting equitable relief; (3) there is no need to recede from prior decisions of this court because they are in harmony with the applicable recording statutes and a controlling decision of the supreme court; (4) the majority's analysis is based on an incorrect standard of review of legal error, when the correct standard is abuse of discretion. I elaborate on each of these in the following paragraphs.
First, the trial judge did not hold that equitable subrogation is entirely unavailable in Florida, that the recording statutes subsume all claims for equitable liens or subrogation. What he did hold was that if Sun Trust proved everything it wanted to prove at a trial, he would still not grant equitable relief because Sun Trust created its own problem.[5] He stressed that Sun Trust had actual (not merely constructive) notice of the prior existence of Riverside's mortgage lien. As the trial judge explained:
"I don't think they [prior decisions of this court] totally eliminate my ... ability to do the right thing. But I think the circumstances have to be those that would minimize the participation of the aggrieved party in creating its own problem. In this case, the aggrieved partyI'm including in that the title insurance companycreated its own problem. And if it were only the title *1229 insurance, I might be struggling more with this than I am. But when you've got three letters in your files saying we hold this mortgage on the property, and ignore those letters, it just starts to get beyond the point of where the courts should save people from themselves."
In other words, the trial judge recognized that Sun Trust, through its title insurer, was the author of the circumstances in which it found itself.
The record supports this conclusion. Riverside gave Sun Trust notice of its added encumbrance on the property, as well as the borrower's agreement not to seek future advances from Sun Trust. Riverside specifically requested that Sun Trust refrain from granting more advances without first giving Riverside notice of any increases in the loan amount. Even if Sun Trust reasonably decided to refinance the loan and extend its lien, in order to do equity it should have first given Riverside notice of its intent so that Riverside could protect its position. Sun Trust failed to act equitably with Riverside by giving it the notice that it had requested. It is rudimentary that one seeking equity must, in turn, have acted equitably itself in the matter. See e.g. Henderson v. Boose, 142 Fla. 804, 821, 196 So. 671, 678 (1939) ("[O]ne who seeks equity must do equity.").
Second, Riverside is manifestly prejudiced by equitably subrogating Riverside to Sun Trust's new mortgage. When Riverside initially approved its loan secured by a mortgage on the same property securing the prior Sun Trust debt, only three years remained on the Sun Trust lien. It then faced the risk of inferiority in priority only for that remaining period of three years. Sun Trust's "refinance" extended what had been a fairly limited duration of its mortgagethree years remaining on an original five year termto a new term of 30 years. Therefore, from the perspective of Riverside, equitable subrogation changes its risk from an inferior position for a relatively short period of 3 years to a newly enlarged period of 30 years. In the business of commercial lending an exposure of inferiority for 3 years may be tolerable, but an extended exposure for 30 years is likely to be economic suicide. The majority's assertion of no prejudice is therefore clearly not supported by the record.
Third, the trial court's denial of equitable relief was entirely consistent with both the recording statutes and Federal Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933), so today's outcome directly conflicts with both the statutes and Godwin. The essential command of the recording statute is that "no ... mortgage of real property ... shall be good and effectual in law or equity [e.s.] against creditors... unless the same be recorded according to law...."[6] By its own terms the statute directly controls equity as well as the law. Priorities of liens are strictly controlled by section 695.11, which places them in the order in which they are recorded.[7] *1230 "Where real property is concerned, it is a firm, long standing principle, that priorities of liens on real property are established by date of recordation." Lamchick, Glucksman & Johnston, P.A. v. City Nat'l Bank of Fla., 659 So.2d 1118, 1120 (Fla. 3rd DCA 1995). The obvious policy behind these statutes is that priorities are not subject to judicial manipulation under generalized notions of equity. Priorities are not determined by who is unjustly enriched but rather by who is the first to file. Riverside is deemed to have filed first because Sun Trust satisfied its former mortgage lien.
The traditional purpose of equity was to allow judges to grant relief from the harsh consequences of the common law where the application of the law was unjust. Here we confront not the common law but a statutory framework of priorities as to claims against real property. Because it is a statute that would be displaced by equitable subrogation, judges have even less discretion than they would have if the common law were involved. Any discretion they do have must be exercised consistently with the statutory scheme.
To repeat, the statute plainly says that its provisions govern even "in equity,"[8] and there is nothing in these statutes affording judges any discretion to vary statutory priorities according to their own notions of equity. In reality that is what the majority have done by today's decision. By invoking the notion of unjust enrichment as a talisman, our court has effectually required as a matter of law that statutory priorities should be subjected to judicial alterationand, at that, virtually whenever a lender negligently fails to comply with the recording laws. No decision of the supreme court has so construed the power of judges under the recording statutes.
I recognize that equitable subrogation was born from the ancient equitable notion of unjust enrichment. See Godwin, 107 Fla. at 549, 145 So. at 885 ("It rests on the maxim that no one shall be enriched by another's loss...."). The fact that an equitable remedy is founded on a certain maxim does not, however, preclude the Legislature from limiting or even barring its use. The decision in Godwin is explicitly not to the contrary. Because the recording statutes control priorities among lien claimants, Godwin explicitly made the conditions of fraud, ignorance of the other mortgage, and reasonable diligence to perfect a first mortgage indispensable to any avoidance of the letter of the recording statutes. Nothing in Godwin suggests otherwise.
In Godwin the lender was deliberately misled by the borrower as to what encumbrances existed on the property. The lender relied on this lie and, while he had an abstract of title prepared, it did not show the intervening mortgage. Godwin, 107 Fla. at 550, 145 So. at 885 ("It is shown that ... complainant secured an abstract of title to said lands, but that it showed no record of the mortgage held by Alderman."). The supreme court emphasized *1231 that the lender "made every effort in reason [e.s.] to locate and quiet all claims to said lands." Godwin, 107 Fla. at 550, 145 So. at 885. A condition of the loan was to pay off all existing liens and mortgages out of the proceeds and thereby perfect an indisputable first lien. Godwin carefully emphasized that equity would grant relief only because of "this fraud and failure to locate any adverse claimant to said lands...." 107 Fla. at 551, 145 So. at 885.
In approving equitable subrogation, Godwin significantly distinguished Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916), where it had denied such relief. In Godwin the court explained that its decision to deny equitable subrogation in Boley:
"turned on the fact that [the lender] was a volunteer, did not examine the record, was not the victim of false representations, was under no duty to pay the first mortgage, and exercised no care or effort to make his mortgage a first lien." [e.s.]
Godwin, 107 Fla. at 551, 145 So. at 886. Yet Sun Trust stands in no better shoes than did the claimant in Boley v. Daniel. Sun Trust's title insurer did almost nothing to place Sun Trust in the senior position. Apart from the fact that Sun Trust was not attempting to pay off existing encumbrances, and thereby to insure the senior (and only) position of lienor, it ignored the Riverside notices in Sun Trust's own files. After obtaining a title report clearly showing Riverside's mortgage, they failed to read the recorded papers to ascertain that the actual holder of the mortgage was Riverside. If this kind of conduct is sufficient for equitable subrogation, it is hard to imagine a would-be encumbrancer who would not be entitled to this relief.
The majority says that my understanding of Godwin would make the availability of equitable subrogation depend on the degree of negligence of the party seeking such relief. Indeed, I do not comprehend how Godwin can be read to do anything but hold that negligence of the claimant is a strong factor against such relief, and the opinion bears that out, as I have just shown. Godwin, 107 Fla. at 549, 145 So. at 885 (lender "made every effort in reason to locate and quiet all claims [e.s.]... and [borrower agreed]...that the ... mortgage... should be a first lien...."). Again, Sun Trust made no effort to pay off all inferior liens as in Godwin and thus establish itself as the first and only lien holder.
It is difficult to imagine how Godwin could be clearer in its holding that the borrower's fraud, the ignorance of an existing mortgage and reasonable efforts to perfect a first mortgage by paying off all junior encumbrances out of the loan proceeds are indispensable to granting the remedy of equitable subrogation. In spite of the neglect of Sun Trust and its title company, the majority sweeps them all aside and instead rests its decision solely on unjust enrichment. The majority opinion even fails to explain exactly what this "unjust enrichment" consists of in this case. What enrichment and why is it unjust?
The majority also asserts that both here and in Godwin the existing mortgage was duly recorded but that in both the party seeking equitable subrogation failed to learn of the existing lien. But the record here does not show that Sun Trust failed to learn of the Riverside mortgage. Sun Trust's title company actually discovered the Riverside mortgage in its search of the public records and disclosed it in its title report. The problem was that it inaccurately designated the Riverside mortgage on the title insurance commitment as being held by a corporation related to Sun Trust's borrower. And we should not *1232 overlook the three notices from Riverside by certified mail, each requesting that Sun Trust refrain from giving future advances, as the borrower agreed in the Riverside mortgage not to seek any. In contrast, in Godwin the lender had no notice about the existing mortgageits borrower lied about it, and its duly obtained abstract of title failed to report it. Thus, it is simply not true that Sun Trust is like the lender in Godwin and failed to ascertain the existence of the Riverside mortgage. In reality its title insurer simply failed to read it![9]
The majority relies on RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES, § 7.6 cmt. e (1996) to argue that equitable subrogation is available even where the lender has actual knowledge of the intervening lien. That may well be the position of other states, but it is not the position adopted by the Florida Supreme Court in Godwin. The law of the state of Florida is what our supreme court says it is, not necessarily what the text writers of national publications may say.[10]
The decision in Palm Beach Savings & Loan Association F.S.A. v. Fishbein, 619 So.2d 267 (Fla.1993), is inapposite; Fishbein is not even an equitable subrogation case. Instead it involved an equitable lien where a lender was ignorant of the fact that the husband-borrower had forged the signature of the wife-borrower. The question there was whether the lender's lien was good against the wife-borrower even though her signature was forged where she derived equal benefit from the payment of three prior existing mortgage liens out of the proceeds of the loan in question. To me this does not sound awfully like this case.
The trial court correctly followed our decision in Bank of South Palm Beaches v. Stockton, Whatley, Davin & Co., 473 So.2d 1358 (Fla. 4th DCA 1985), where the mortgagee could have had a subordination agreement with the intervening lender but neglected to do so. It should hardly need saying that Independent Life and Accident Ins. Co. v. New Age Development Corp., 625 So.2d 1243 (Fla.4th DCA 1993), has no precedential value whatever, as it is an affirmance without opinion. The concurring opinion is limited to the persuasiveness of its reasoning, which happens to be in harmony with Godwin. Hence there is absolutely no reason to recede from these decisions because they present no conflict with any supreme court case.
Four, the majority also holds that the claimant is entitled to equitable subrogation as a matter of righti.e., that the trial judge has no discretion to deny this equitable relief. The majority overlooks the truism that equity is nothing less than institutionalized discretion. Its very raison d'être was to allowbut not require an avoidance of legal rules in limited circumstances *1233 where the legal rule was unfair or of doubtful application. Hence there is no such thing as an equitable right. By its very nature equity is discretion; rules of law alone may be invoked as a matter of right. See C.C. Langdell, Classifications of Rights and Wrongs, 13 HARV. L.REV. 659, 670-671 (1900).
Viewed as a matter of discretion, on appeal we can reverse the chancellor only if no reasonable judge would have decided as this one did. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980) ("If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness."); cf. Topper v. Alcazar Operating Co., 160 Fla. 421, 35 So.2d 392 (1948) (specific performance matter of discretion under principles of equity applicable to particular facts). Therefore the issue is whether the judge abused discretion by denying equitable subrogation where Sun Trust was negligent and refused to act equitably itself.
The granting of equitable relief is rarely if ever mechanical and almost always subject to principles and standards. An example is that one seeking equity should have acted reasonably to protect its own interests. See Lanigan v. Lanigan, 78 So.2d 92, 96 (Fla.1955) ("No rule is better settled than that equity aids the vigilant and not the indolent."); Blocker v. Ferguson, 47 So.2d 694, 701 (Fla.1950) (equity rewards the vigilant); DeHuy v. Osborne, 96 Fla. 435, 442, 118 So. 161, 163 (1928) ("if the purchaser would seek the aid of a court of equity, he must act with appropriate diligence in asserting his rights ..."); Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A., 524 So.2d 439, 446 (Fla. 5th DCA 1988) ("[E]quitable subrogation is governed by the operation of equitable principles and is not applied where it works an injustice to third parties."); Nussey v. Caufield, 146 So.2d 779, 783 (Fla. 2nd DCA 1962) ("[I]t is not the office of equity to shield a litigant from that which results from his own improvidence.").
Equitable discretion is not unlimited or open-ended, a wooden application of ancient maxims. Equity is instead under the influence of legal rules. See Flagler v. Flagler, 94 So.2d 592 (Fla.1957) ("But we cannot agree that courts of equity have any right or power under the law of Florida to issue such order it considers to be in the best interest of `social justice' at the particular moment without regard to established law."); Schwartz v. Zaconick, 68 So.2d 173 (Fla.1953) ("Equity, although not as inflexible as the law, is nevertheless administered within established limits and upon recognized principles."); August Tobler Inc. v. Goolsby, 67 So.2d 537 (Fla. 1953) ("the equities here are equal and...consequently the maxim `Equity follows the law' is applicable."); Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916) (equity will not apply doctrine of equitable subrogation where it would deprive party of legal right).
As Judge Hurley so cogently put it in Bank of South Palm Beaches v. Stockton, Whatley, Davin & Co., 473 So.2d 1358, 1361 (Fla. 4th DCA 1985):
"[c]ourts of equity have no power to overrule established law. This... principle delineates the jurisprudential borders beyond which courts of equity may not venture." [c.o.]
That is a formal way of saying that for the most part legal rules set the benchmark for what courts will consider equitable. If a legal rule provides a party with perfectly effective self-protection but the party unreasonably *1234 fails to make use of the rule's protection, there is nothing inequitable in letting that party remain where its own conduct has placed it. The cases hold that a judge does not abuse equitable discretion by such a resolution. Hence the trial judge did not abuse discretion in this case.
I would affirm.
GUNTHER, J., concurs.
NOTES
[1] Fishbein v. Palm Beach Sav. & Loan Ass'n, F.S.A., 585 So.2d 1052 (Fla. 4th DCA 1991).
[2] In Hieber v. Florida National Bank, 522 So.2d 878 (Fla. 3d DCA 1988), the third district assumed that the question of whether equitable subrogation should be applied under similar facts was a question of first impression and rejected it. Before and after Hieber, however, the third district recognized the doctrine. Eastern Nat'l Bank v. Glendale Fed. Sav. and Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987); Wolf v. Spariosu, 706 So.2d 881 (Fla. 3d DCA 1998).
[3] We respectfully disagree with Judge Farmer's interpretation of Godwin in his dissent. His reading of Godwin would make the availability of the doctrine of equitable subrogation depend on how negligent was the party seeking to apply the doctrine. Yet in both Godwin and in the present case the second mortgage was of record, but the lender refinancing the first mortgage did not pick it up. We read Godwin as standing for the proposition that equitable subrogation will be granted to prevent unjust enrichment, even though the party seeking it was negligent, as long as there is no prejudice.

Fishbein is consistent with that view. In Fishbein the lender, although it knew the husband and wife were getting a divorce, trusted the husband to obtain his wife's signature on the new mortgage. Despite the bank's negligence, which the supreme court recognized in Fishbein, it granted relief based on the doctrine of equitable subrogation. The language we quoted from Godwin explains that the doctrine is "employed to relieve from fraud or mistake, but is not allowed if it works any injustice to the rights of others." Godwin, 145 So. at 885-86. The RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.6 cmt.e (1996), supports our conclusion that Suntrust's negligence does not preclude equitable subrogation.
[4] The title insurance company was hired by Sun Trust to examine title, close the loan, and then insure that Sun Trust had a first mortgage lien. When such a title insurer fails to ascertain a duly recorded mortgage lien clearly appearing in the public records, it can safely be said that it was considerably negligent. It amounts to a total failure to perform the very thing for which it was hired (and paid) in the first place. In this case, the title insurer was also one of Sun Trust's approved closing agents, so it cannot be said that this was the mistake of the amateur.
[5] The judgment comes to us from a motion for summary judgment, not a trial. Sun Trust believed that it had presented all the supporting evidence it could muster and that if the court was inclined to grant equitable relief, it should do so on the basis of what was already in the record before the court. In fact both sides apparently thought the evidence on the equitable issue so crystallized that a formal trial would be superfluous, because both sides petitioned for a judgment without a trial. Although I concede that this is seemingly at odds with the governing standard for summary judgment in contested cases where a party really wants a chance to persuade a jury, see Holl v. Talcott, 191 So.2d 40 (Fla. 1966) (party moving for summary judgment must conclusively prove absence of triable issues), I know of no reason why in cases of purely equitable claims parties should not be allowed to forego the trappings of full blown trials and present the critical issue on cross motions for summary judgment. That is what happened here. And while I do not believe that a party so conducting itself in the trial court should be able on appeal to avoid such a purposeful waiver of formal trial, in this case appellant is commendably consistent with its trial court position.
[6] § 695.01 Fla. Stat. (2000) ("No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser."). [e.s.]
[7] § 695.11, Fla. Stat. (2000) ("All instruments which are authorized or required to be recorded in the office of the clerk of the circuit court of any county in the State of Florida, and which are to be recorded in the `Official Records' as provided for under s. 28.222, and which are filed for recording on or after the effective date of this act, shall be deemed to have been officially accepted by the said officer, and officially recorded, at the time she or he affixed thereon the consecutive official register numbers required under s. 28.222, and at such time shall be notice to all persons. The sequence of such official numbers shall determine the priority of recordation. An instrument bearing the lower number in the then-current series of numbers shall have priority over any instrument bearing a higher number in the same series."). [e.s.]
[8] § 695.11, Fla. Stat. (2000).
[9] In considering equitable subrogation, should judges overlook the obvious truth that Sun Trust has a legal remedy against its woefully neglectful title insurer? I don't think so.
[10] Of course when the court adopts a rule as set down in one of the Restatements, that Restatement then becomes the law of Florida and we must properly turn to it for guidance. Compare, e.g., West v. Caterpillar Tractor Co., 336 So.2d 80, 87 (Fla.1976) ("We adopt the doctrine of strict liability as stated by [e.s.] the A.L.I. Restatement (Second) of Torts § 402A."); with Gilchrist Timber Co. v. ITT Rayonier Inc., 696 So.2d 334, 339 (Fla.1997) ("By this opinion, we adopt the Restatement (Second) of Torts' position [e.s.] on negligent misrepresentation contained in section 552."); and First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9, 14 (Fla.1990) ("we have decided to adopt the rationale [e.s.] of section 552, Restatement (Second) of Torts."). Quære whether adopting the position or rationale of a Restatement is the same thing as adopting the text of a restatement. Neither one, however, is the circumstance we face in this case.