WOLF, J.
 

 Aurora seeks review of the trial court’s order granting the Barrys’ motion for summary judgment in the underlying foreclosure action which concluded, as a matter of law, that the Barrys’ mortgage was first in seniority to Aurora’s mortgage. We reverse.
 

 The Facts:
 

 On or about May 31, 2005, Olga and Yuri Senchuk (the Senchuks) executed a mortgage in favor of Wells Fargo Bank, in the principal amount of $419,330.00, and this mortgage was recorded on June 13, 2005. On August 3, 2005, the Senchuks executed and delivered a second mortgage (Barrys’ mortgage) with a principal loan amount of $70,000, and this mortgage was recorded on August 11, 2005.
 

 On November 16, 2006, the Senchuks executed the underlying Aurora mortgage for the amount of $507,900.00, which was used to pay off the first mortgage with the remainder being paid to the Senchuks personally. This mortgage was recorded shortly thereafter, but the record reveals the Senchuks did not use the additional proceeds to pay off the Barrys’ mortgage and that mortgage remained unsatisfied.
 

 At some point, the Senchuks defaulted on both the Aurora mortgage and the Barrys’ mortgage and Aurora initiated a foreclosure action joining the Barrys as interested parties. The Barrys filed an answer/counterclaim to the foreclosure complaint seeking a ruling that their mortgage was superior to Aurora’s based on the Florida recording statutes. The Barrys moved for summary judgment on the counterclaim, and Aurora asserted summary judgment was inappropriate because the doctrine of equitable subrogation should be employed to place Aurora’s mortgage in the senior lien position. The trial court rejected Aurora’s argument and entered a final order of foreclosure which granted the motion for summary judgment in favor of the Barrys and placed the Barrys’ mortgage first in priority.
 

 The Doctrine of Equitable Subrogation:
 

 Among other issues, Aurora asserts the trial court erred in determining the doctrine of equitable subrogation did not
 
 *718
 
 apply to allow the Aurora mortgage, which refinanced the first mortgage, to step into the proverbial shoes of the original mortgage holder. Equitable subrogation is a remedy in equity and its application has been debated in several Florida opinions. Generally, subrogation is “[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.”
 
 Black’s Law Dictionary
 
 1440 (7th ed. 1999).
 

 Equitable subrogation has been employed by courts to allow creditors refinancing a first mortgage to retain the position of senior lien holder in foreclosure actions in which an otherwise junior hen holder alleges seniority by virtue of the recording dates of the mortgages. The first Florida case considering equitable subrogation in this context was
 
 Boley v. Daniel,
 
 72 Fla. 121, 72 So. 644 (1916).
 

 In
 
 Boley,
 
 Daniel made a loan for the purpose of satisfying a property’s existing first mortgage without actual knowledge of an existing second mortgage on the property with Boley.
 
 Id.
 
 at 645. After stating the facts, the
 
 Boley
 
 court reasoned:
 

 The fact that a subsequent mortgagee’s lien will occupy the same relation to the property, if one who has advanced money, secured by a mortgage on the real estate, to pay off the prior mortgage, is subrogated to the rights of the holder of such first mortgage, affords no reason why equity should permit the party so advancing the money to be subrogated to the right of the holder of the first mortgage.
 

 When a first mortgage lien existing against real estate is paid off, the lien of a second mortgage thereon becomes at once, by operation of law, a first lien on the property; and this first lien, and the right to enforce it as such, are vested rights.
 

 Courts of equity will not apply the doctrine of subrogation where to do so would be to deprive a party of a legal right.
 

 Being under no duty, legal or otherwise, to pay the first mortgage debts, Daniel is not entitled to a legal subrogation to the prior right that had existed in favor of the first mortgage holder. And not having shown an agreement that the lien of the first mortgage should be kept alive for his benefit, but it appearing merely that the agreement was for ‘a first lien on the property covered by’ the last mortgage, which included other property besides that covered by the first mortgage, and that Daniel, ⅛ the belief that there were no other liens on the property, caused to be satisfied on record the first mortgage,’ there is no clear showing of a right to a conventional subrogation.
 

 Id.
 
 at 645^6 (citations omitted).
 
 Boley
 
 appears to have rejected the doctrine of equitable subrogation in the mortgage context. However, while this case was never expressly overruled, in
 
 Forman v. First National Bank of Quincy,
 
 76 Fla. 48, 79 So. 742 (1918), the supreme court narrowed the holding of
 
 Boley
 
 to its facts and for the first time, applied the doctrine of equitable subrogation to allow a refinancer of a first mortgage to retain the seniority of the first mortgage against a second. In
 
 Forman,
 
 the court noted:
 

 The complainant banks cannot complain at this conclusion. It leaves them in precisely the same position, with respect to their security, that they occupied at the time they became the holders of the notes which are the basis of their claims.
 

 Id.
 
 at 744.
 

 Several years later, in
 
 Federal Land Bank of Columbia v. Godwin,
 
 107 Fla. 537,
 
 *719
 
 145 So. 883, 885-86 (1933), the court again applied the doctrine, stating:
 

 In representing that there were no other incumbrances on the lands mortgaged, Godwin perpetrated a fraud on appellant. As a result of this fraud and failure to locate any adverse claimant to said lands, appellant advanced money to retire Godwin’s first mortgage on the express agreement that it (appellant) was to have a first lien on said lands to secure repayment of the sum loaned. It would be grossly inequitable under such circumstances to hold that the appellant was not entitled, as against the holder of the second mortgage, to be treated as the assignee of the first mortgage, and thus by chance or fortune raise the second mortgage to the dignity of the first, contrary to the intention of the parties.
 

 The application of this rule works common justice to all; it prevents injury to appellant, who furnished the money to pay off the first mortgage in ignorance of the second; it gives appellant the benefit of its payment, carries out the intention of the parties; and leaves Alderman, the holder of the junior mortgage, in his original position. One of the first tests determining the application of this rule is whether or not subrogation to the place of the prior or retired lien puts the holder of the second lien in any worse position than if the prior lien had not been discharged.
 

 Godwin
 
 suggests if the first mortgage holder made all reasonable efforts to discover any mortgages or encumbrances against the property, the doctrine of equitable subrogation should be employed to protect its security interest. However, in doing so,
 
 Godwin
 
 again reiterated the importance of determining if the second mortgage holder would be left in the same position for which the second mortgage holder had originally contracted.
 
 Id.
 

 Since this early line of cases, equitable subrogation was again discussed in 1987 when the Third District in
 
 Eastern National Bank v. Glendale Federal Savings and Loan Association,
 
 508 So.2d 1323, 1324-25 (Fla. 3d DCA 1987), considered a case very similar to the underlying case and stated in pertinent part:
 

 Some courts have refused to apply the doctrine where the party seeking to invoke it is negligent, stating that to do so would be to reward negligence.
 
 Fort Dodge Bldg. & Loan Ass’n v. Scott,
 
 86 Iowa 431, 53 N.W. 283 (1892). However, two grounds are recognized for permitting subrogation against intervening interests even where there is a negligent failure to discover a prior recorded junior lien. First, negligence which has not resulted in harm to anyone will not be invoked to permit unjust enrichment of the later lienors through their fortuitous advancement in priority by reason of mistake.
 
 See Federal Land Bank v. Joynes,
 
 179 Va. 394, 18 S.E.2d 917 (1942);
 
 Banta v. Vreeland,
 
 15 N.J.Eq. 103, 107 (1862). Second, the function of constructive notice is to preserve an existing advantage and not to gain a new one.
 
 Martin v. Hickenlooper,
 
 90 Utah 150, 59 P.2d 1139 (1936); Note,
 
 Equitable Substitution of Mortgages,
 
 26 Harv. L. Rev. 261 (1913).
 

 However, after discussing constructive notice and its bearing on the application of the equitable subrogation doctrine, the court declined to rule on the matter, finding conventional subrogation, or subrogation contracted for between the original parties, provided the refinancing bank relief because a contractual provision existed between the debtors and the refinancing bank which stated the bank would be entitled to the rights and remedies of the first mortgage holder.
 
 Id.
 
 at 1325. '
 

 
 *720
 
 Several years later, in
 
 Suntrust Bank v. Riverside National Bank of Florida,
 
 792 So.2d 1222 (Fla. 4th DCA 2001), an en banc decision, the Fourth District issued an opinion on the matter of equitable sub-rogation in the mortgage context. In
 
 Sun-trust,
 
 the Fourth District applied the doctrine to preserve Suntrust’s rights after Suntrust paid for and received a title search which did not evidence the existence of a second mortgage on the property. In
 
 Suntrust,
 
 the court reasoned in pertinent part:
 

 The only distinction between
 
 Godwin
 
 and the present case is that in
 
 Godwin,
 
 in addition to the bank negligently failing to find the second mortgage when it searched the title, the owner fraudulently misrepresented that there were no other liens. Although there was no fraud in the present case, it is clear from the opinion in
 
 Godwin
 
 that equitable subrogation will be applied to relieve negligence, where the position of the original junior lienors will be no worse than before the first mortgage was satisfied.
 

 [[Image here]]
 

 We emphasize, however, that equitable subrogation “is not allowed if it works any injustice to the rights of others.”
 
 Godwin,
 
 145 So. at 885. Accordingly Suntrust will only be entitled to equitable subrogation to the extent that Riverside will be no worse off than it would have been if the original Suntrust mortgage had not been satisfied.
 

 Id.
 
 at 1224-25, 1227.
 

 Constructive Notice and Equitable Subrogation:
 

 The trial court, in granting summary judgment in favor of the Barrys, provided two alternative grounds for the grant. First, relying on a Florida federal district opinion,
 
 Picker Financial Group L.L.C. v. Horizon Bank,
 
 293 B.R. 253 (M.D.Fla.2003), the trial court determined that constructive notice barred the application
 
 of
 
 equitable subrogation. This holding was error.
 

 In
 
 Picker,
 
 the federal court surveyed national and Florida law on the issue of whether constructive notice bars the application of equitable subrogation in similar cases and stated in pertinent part:
 

 Under the traditional view, constructive notice of a second position lienor prevented subrogation to the first lienor by a subsequent lender who paid off the first lienor. Other courts, ... adopted the so called modern view. Under the modern view, which this Court calls the pure liberal view, constructive notice is irrelevant and subrogation is allowed unless the intervening lender suffers some prejudice.
 

 [[Image here]]
 

 In
 
 Boley v. Daniel, 72
 
 Fla. 121, 72 So. 644 (1916), the Florida Supreme Court clearly stated that when a lender on constructive, but not actual, notice of a second position lien loans money to pay off a first position lien, even with an understanding that it is to have a first lien on the property, equitable subrogation is not available to it. This is a strict traditional view.
 

 Id.
 
 at 256, 258.
 
 Picker’s
 
 assertion that
 
 Boley
 
 “clearly” stated constructive notice bars the application of equitable subrogation is erroneous; nothing in
 
 Boley
 
 considered constructive notice and the opinion does not rely on such notice to determine Daniel was not entitled to subrogation.
 
 Boley,
 
 72 So. at 645. The court in
 
 Boley
 
 rejected the application of the doctrine because Daniel (1) was a volunteer and (2) had not contracted for the right of first position in light of his lack of actual notice of the second mortgage.
 
 Boley, 72 So.
 
 at 645. As such, the trial court should not
 
 *721
 
 have relied on
 
 Picker’s
 
 interpretation of
 
 Boley
 
 as a case which established the application in Florida of the traditional view of equitable subrogation as applied to mortgages.
 

 In addition, even if
 
 Picker’s
 
 interpretation of
 
 Boley
 
 had been correct, the reasoning does nothing to reconcile the later Florida Supreme Court cases which applied the doctrine without regard to constructive notice.
 
 See Forman,
 
 79 So. 742;
 
 Godwin,
 
 145 So. 883;
 
 Eastern Nat’l Bank,
 
 508 So.2d 1323. As these cases indicate, Florida precedent, leading up to the
 
 Sun-trust
 
 decision, has applied the modern view generally allowing subrogation unless the rights of the second lien holder are violated. As such, the trial court erred in applying the traditional view to the underlying case.
 

 Further, regardless of the
 
 Picker
 
 decision, the trial court was required to follow
 
 Suntrust,
 
 as it was a controlling decision of a district court in Florida.
 
 Pardo v. State,
 
 596 So.2d 665, 666 (Fla.1992) (finding that in the absence of inter-district conflict or contrary precedent for the supreme court, the decision of a district court of appeal is binding throughout Florida);
 
 see also Roland v. Fla. East Coast Ry., LLC,
 
 873 So.2d 1271, 1275 n. 5 (Fla. 3d DCA 2004) (holding the Florida appellate courts are not bound by federal precedent which is persuasive, not binding, authority) (citations omitted). As such, for these reasons, the trial court erred in granting summary judgment based on its interpretation of
 
 Boley
 
 as barring the application of equitable subrogation where a refinancing lender had constructive notice of a second lien holder.
 

 Injustice and Equitable Subrogation:
 

 As an alternative ground for granting summary judgment, the trial court stated:
 

 From the HUD-1, Exhibit C to the Response, one can see (assuming the truth of the matters) that the Senchuks received over $70,000.00 in proceeds from the closing which resulted in the mortgage Plaintiff claims to hold, and that sum would have been sufficient to pay at least the entire principal of the Barry’s mortgage.
 

 Based on the foregoing, the trial court reasoned the application of the equitable subrogation doctrine would work an injustice in this case, placing the second mortgage holder in a worse position than it would have been without the refinancing.
 

 While almost all Florida cases dealing with equitable subrogation in the mortgage context suggest the doctrine may not be applied in derogation of the rights of the second lien holder, none of these cases clarify in what situations a second lien holder would be prejudiced.
 
 See Forman,
 
 79 So. 742;
 
 Godwin,
 
 145 So. 883;
 
 Suntrust,
 
 792 So.2d 1222. The best guidance is offered in
 
 Godwin
 
 where the court held an “injury” to the second lien holder would exist if the lien holder were left in a worse position than if the “prior lien had not been discharged.”
 
 Godwin,
 
 145 So. at 886.
 

 As no prior cases offer guidance as to what constitutes prejudice pursuant to
 
 Godwin
 
 and
 
 Suntrust,
 
 this court must address the issue for the first time. It is axiomatic that the position of a lien holder has no meaning unless and until a foreclosure action is initiated. Thus, it follows the determination of what constitutes prejudice to a second lien holder must be confined to what would constitute prejudice in the event of a foreclosure.
 

 A second lien holder, at the point of negotiating a second mortgage, takes a risk and accepts its position in the event of a foreclosure with respect to the amount lent on the first mortgage. However, when a first mortgage loan is refinanced for more than the amount due and owing
 
 *722
 
 on the first mortgage, the risks assumed by the second lien holder increase without the second lien holder’s consent. Namely, the refinancing lender is now able to recover more in a foreclosure action than the amount assumed recoverable by the second lien holder at the time it negotiated its second mortgage on the property.
 

 Equitable subrogation is defined as the placement of one party into the shoes of another so that the substituting party retains the rights, remedies, or securities that would otherwise belong to the original party.
 
 Black’s Law Dictionary
 
 1440 (7th ed. 1999). When a refinancing lender increases the principal loan amount and accepts the property used as collateral for the first mortgage, it does more than slip into the proverbial shoes of the first lender. The new mortgage holder does not retain the same rights, remedies, and securities that would be available to the first party. Instead, the new lender is entitled to no more than the original lender at the second mortgage holder’s expense and without its consent. Accordingly, this is the exact situation contemplated by
 
 God-win
 
 and
 
 Suntrust
 
 in which a second mortgage holder is prejudiced through a refinancing.
 

 However, in Aurora’s response to the Barrys’ motion for summary judgment, Aurora argues they were entitled to equitable subrogation “to the extent the proceeds from the Plaintiffs mortgage were used to satisfy the prior mortgage.” Further, below, Aurora asserted it is entitled to “step into the shoes” of the first lien holder “for a minimum amount of $419,459.77” or the amount due and owing on the first mortgage.
 

 Based on Florida law, the doctrine of equitable subrogation is available to place a refinancer in the shoes of the first mortgage as long as doing so does not put the second lien holder in a worse position than for which it bargained. Because Aurora’s request for equitable subrogation up to the amount owed on the first mortgage would not put the Barrys in a worse position than they bargained for, the trial court erred in determining Aurora was not entitled to equitable subrogation up to the amount paid off on the first mortgage as a matter of law.
 

 Summary Judgment and Equitable Subrogation:
 

 Last, to the extent the Barrys assert Aurora did not provide sufficient facts establishing its entitlement to equitable sub-rogation below, “ ‘[t]he party moving for summary judgment must factually refute or disprove the affirmative defenses raised, or establish that the defenses are insufficient as a matter of law.’ ”
 
 Leal v. Deutsche Bank Nat’l Trust Co.,
 
 21 So.3d 907, 909 (Fla. 3d DCA 2009)
 
 (quoting
 
 Kendall Coffey,
 
 Foreclosures in Florida
 
 493 (2008))
 
 (citing Stop & Shoppe Mart, Inc. v. Mehdi,
 
 854 So.2d 784 (Fla. 5th DCA 2003);
 
 Manassas Inv., Inc. v. O’Hanrahan,
 
 817 So.2d 1080 (Fla. 2d DCA 2002)).
 

 Accordingly, once Aurora raised the affirmative defense of equitable subro-gation, the Barrys were required to refute Aurora’s entitlement to the defense. The Barrys provided no evidence foreclosing Aurora’s entitlement to the affirmative defense. Specifically, as evidenced in the foregoing issue, while equitable subrogation is not a matter of right in Florida, it is generally employed in similar circumstances.
 
 See, e.g., Forman,
 
 79 So. 742;
 
 Godwin,
 
 145 So. 883;
 
 Suntrust,
 
 792 So.2d 1222. For the foregoing reasons, we reverse the final judgment of foreclosure and remand for further proceedings.
 

 WEBSTER and THOMAS, JJ., concur.